# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Carol Kemp-DeLisser, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>Saint Francis Hospital and Medical Center, Saint Francis Hospital and Medical Center Finance Committee, Saint Francis Hospital and Medical Center Retirement Committee, and John Does 1-20,<br><br>                    Defendants. | Civil Action No. 3:15-cv-01113 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

BACKGROUND OF THE LITIGATION.......................................................................... 3

I.        NATURE OF THE CLAIMS AND PROCEDURAL HISTORY......................... 3

II.      SUMMARY OF THE PROPOSED SETTLEMENT............................................ 5

         A.     The Class Settlement Amount .................................................... 5

         B.     Agreed Upon Plan Provisions .................................................... 5

         C.     Trinity Shall Lend To Insure Funding ....................................... 6

         D.     Settlement Class......................................................................... 6

         E.     Released Claims......................................................................... 6

         F.     Payment to Plaintiff's Counsel ................................................. 6

ARGUMENT ................................................................................................................. 7

III.     THE SETTLEMENT SHOULD BE APPROVED................................................ 8

         A.     The Complexity, Expense and Likely Duration of the Litigation ............. 9

         B.     The Stage of the Proceedings.................................................... 10

         C.     The Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial ...................................................... 11

         D.     The Ability of Defendant to Withstand a Greater Judgment ................... 12

         E.     The Reasonableness of the Settlement...................................... 12

         F.     The Reaction of the Class ........................................................ 13

IV.     A SETTLEMENT CLASS SHOULD BE CERTIFIED....................................... 14

         A.     The Proposed Class Satisfies the Requirements of Rule 23(a)................. 15

         B.     The Class Satisfies the Requirements of Rule 23(b)(1)........................... 16

         C.     The Class Satisfies the Requirements of Rule 23(b)(2)........................... 18

         D.     Rule 23 (g) is Satisfied............................................................. 19

CONCLUSION.............................................................................................................. 19

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004) ............................................................ 9

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 14

*Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002) ........................................................ 17

*Berger v. Xerox Corp. Retirement Income Guar. Plan*, 338 F.3d 755
    (7th Cir. 2003) ............................................................................................................ 18

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423
    (E.D.N.Y. May 22, 1990) ............................................................................................ 13

*Charron v. Weiner*, 731 F.3d 241 (2d Cir. 2013) ............................................................ 9

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................. 8, 11, 13

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .................................... 12

*Gruby v. Brady*, 838 F. Supp. 820 (S.D.N.Y. 1993) ........................................................ 17

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd,* 818 F.2d 145 (2d Cir. 1987) ............................................................................ 12

*In re AOL Time Warner ERISA Litig.*, No 02-cv-8853, 2006 WL 2789862
    (S.D.N.Y. Sept. 27, 2006) ...................................................................................... 15, 16

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164
    (S.D.N.Y 2000) ............................................................................................................ 13

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436
    (S.D.N.Y. 2004) .................................................................................................. 10, 15, 18

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ............................................ 17

*In re Oxford Health Plans, Inc.*, 1919 F.R.D. 369 (S.D.N.Y. 2000) ................................ 16

*In re Painewebber Ltd. Partnerships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ............ 8, 12

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) .......................................... 17

*In re Schering Plough ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) .................................. 17

*In re WorldCom, Inc. ERISA Litig.*, No. 02-cv-4816, 2004 WL 2211664
    (S.D.N.Y. Oct. 4, 2004) .............................................................................................. 17

*Kochilas v. National Merchant Services, Inc.*, No. 14-cv-0311,
   2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015)................................................ 12

*Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)................................. 15

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009)....................... 8

*Menkes v. Stolt-Neilsen S.A.*, 270 F.R.D. 80 (D. Conn. 2010) ......................... 8

*Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993)............ 9

*Morse v. Stanley*, 732 F.2d 1139 (2d Cir. 1984)............................................... 17

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004)....................................... 10

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ....... 13

*Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165 (D. Conn. 2006) ............ 19

*Strougo ex rel., Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254
   (S.D.N.Y. 2003) ............................................................................................ 9

*Taylor v. United Technologies Corp.*, No. 06-cv-1494,
   2008 WL 2333120 (D. Conn. June 3, 2008).............................................. 17

*Wal-mart Store Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ............ 7, 8

*Weinberger v. Kendrick*, 698 F.2d 61(2d Cir. 1982) .................................... 8, 10

## **Rules of Court**

Fed. R. Civ. P. 23............................................................................................. 15

Fed. R. Civ. P. 23(a) ............................................................................... 6, 14, 16

Fed. R. Civ. P. 23(a)(1)..................................................................................... 15

Fed. R. Civ. P. 23(a)(2)..................................................................................... 15

Fed. R. Civ. P. 23(a)(3)................................................................................ 15, 16

Fed. R. Civ. P. 23(a)(4)..................................................................................... 16

Fed. R. Civ. P. 23(b) ......................................................................................... 14

Fed. R. Civ. P. 23(b)(1)........................................................... 1, 6, 16, 17, 18

Fed. R. Civ. P. 23(b)(1)(A) ............................................................................... 16

56311653v6

Fed. R. Civ. P. 23(b)(1)(B) ....................................................................... 16, 17

Fed. R. Civ. P. 23(b)(2) .................................................................... 1, 6, 18, 19

Fed. R. Civ. P. 23(e) ...................................................................................... 1

Fed. R. Civ. P. 23(g) ............................................................................. 16, 19

**<u>Other Authorities</u>**

MANUEL FOR COMPLEX LITIGATION (3d ed. 1995) ........................................... 10

Newberg & Conte, NEWBERG ON CLASS ACTIONS (5th ed. 2014) ................................. 7, 8

## INTRODUCTION

Plaintiff Carol Kemp-DeLisser ("Named Plaintiff" or "Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, respectfully submits this memorandum pursuant to Federal Rule of Civil Procedure 23(e) and the Employee Retirement Income Security Act of 1974 ("ERISA") in support of her motion for an order granting final approval of the proposed settlement of this class action.  Specifically, Plaintiff moves the Court for an Order: (1) approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement"); (2) certifying the proposed Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2); and (3) confirming the appointment of Plaintiff as the representative of the class, and Izard, Kindall & Raabe, LLP and McCarthy, Coombes & Costello LLP as Class Counsel.[1]

The proposed Settlement provides for the payment of Plan funding over a ten-year period of one hundred and seven million dollars ($107,000,000) for the benefit of the Saint Francis Hospital and Medical Center Pension Plan (the "Plan") and its participants and beneficiaries. Under the Settlement, Saint Francis Hospital Medical Center, Saint Francis Hospital Medical Center Finance Committee, and Saint Francis Hospital Medical Center Retirement Committee (collectively "Defendants" or "Saint Francis") will provide a one-time contribution of seventeen million dollars ($17,000,000) to the plan for funding.  Every year thereafter for nine years, Saint Francis will make a ten million dollar ($10,000,000) funding contribution to the Plan on an annual basis.  The Settlement also provides for equitable provisions concerning future benefits and continuing obligations for Defendants regarding the Plan, including that Saint Francis agrees to pay accrued benefits for fifteen (15) years, provided the Plan remains in existence, which is

---

[1] Capitalized terms used herein but not otherwise defined take the meaning ascribed to them in the Settlement Agreement, which is attached as Exhibit 1 to the Declaration of Robert A. Izard submitted herewith ("Izard Decl.").

critical given that Saint Francis currently has no legal funding obligation under the Plan currently. Most significantly, Saint Francis agrees to guarantee accrued benefit payments under the Plan and, in the event that Saint Francis is unable to guarantee those payments, it agrees to borrow, and its corporate parent, Trinity Health Corporation ("Trinity"), will allow Saint Francis Hospital and Medical Center to borrow, any shortfall through an intercompany loan program in order to assure these contributions will be made to the Plan. The Settlement is in the best interest of the Class and provides a significant recovery, especially in light of the risks of continued litigation.

Plaintiff, along with Defendants (collectively, the "Settling Parties"), believe that the proposed Settlement is fair, reasonable and adequate and should be approved.  The Settlement resolves the claims against all Defendants and was negotiated after Defendants filed their motion to dismiss.  Following the filing of that motion, the Settling Parties agreed to participate in an arms'-length mediation session conducted by Robert A. Meyer, Esq. of Loeb & Loeb LLP, who is experienced with mediating large, complex matters including ERISA and other class actions. After working with Mr. Meyer, including active participation in two full days of mediation, the Settling parties agreed to the terms of the Settlement Agreement that are now being presented to the Court for approval.

The Settlement is an excellent result for the Class, particularly in light of the risks and uncertainty in complex cases such as this Action, and the difficulty and delays that could arise should Defendants seek appellate review in the event that Plaintiff and the Class were successful at trial.  The Settlement provides a significant recovery for the Class and, as such, Plaintiff submits that the Settlement is in the best interest of the Class.  Moreover, the proposed Settlement Class satisfies each of the requirements of the Federal Rules of Civil Procedure and

the proposed Notice Plan satisfies the requirements of due process.   Accordingly, Plaintiff believes that the proposed settlement is fair, reasonable and adequate and warrants the Court's approval.

**BACKGROUND OF THE LITIGATION**

**I.      NATURE OF THE CLAIMS AND PROCEDURAL HISTORY**

The Class Action Complaint (the "Complaint") was filed by Carol Kemp-DeLisser on July 21, 2015 against Saint Francis and other defendants for violations of ERISA.   ECF No. 1. The case was filed by Izard, Kindall & Raabe, LLP and McCarthy, Coombes & Costello LLP ("Class Counsel") who conducted a factual investigation of the case and evaluated all pertinent legal issues prior to filing the Complaint.   Izard Decl. ¶ 2.   The Complaint alleged that Defendants improperly characterized the Plan as a "church plan" in order to avoid their obligations under ERISA.   As a result, Plaintiff alleged that the Plan was underfunded by nearly $140 million or approximately 34%.   Plaintiff further alleged that Saint Francis Hospital and Medical Center ("SFH") is a hospital, not a church or a convention or association of churches. Moreover, because SFH's principal business is healthcare, it is not an organization with the principal purpose or function of providing retirement or welfare benefits.   Thus, Plaintiff alleged that the Plan is not a church plan and is not exempt from the requirements of ERISA.   *Id.*

Defendants moved to dismiss the Complaint on October 19, 2015.   ECF No. 32. Defendants argued that statutory text, court opinions and administrative agency interpretation all support the conclusion that the Plan should be considered a church plan and be exempt from ERISA.   After Defendants filed their motion to dismiss, the parties conferred and agreed to mediation.   Izard Decl. ¶ 3.   These discussions were prompted by the Settling Parties' desire to avoid the burden, expense, and uncertainty of continued litigation and to settle any and all claims that have been or could have been asserted against the Defendants arising out of the conduct

described in the Complaint.  *Id.*  The Settling Parties agreed to Robert A. Meyer as a mediator. Mr. Meyer is a highly skilled and experienced mediator who has mediated many complex cases and class actions.  *Id.*

As part of the mediation process, Defendant produced an actuarial report and other documents to Plaintiff. Izard Decl. ¶ 4.  Plaintiff obtained and produced to Defendant its own expert actuarial report.  *Id.*  The Settling Parties also submitted letter briefs to the mediator, Robert A. Meyer and met with him in New York on December 9, 2015, and in Los Angeles on February 18, 2016. *Id.*  During mediation the Parties exchanged their respective views with Mr. Meyer regarding the merits of the case and the various issues with respect to liability, causation, and damages.  *Id.*  The Settling Parties then successfully reached an agreement-in-principle to settle the case and entered into a Term Sheet setting forth the basic terms of a settlement.  *Id.* After the term sheet was signed, the Settling Parties attempted to reach agreement on the amount of Plaintiff's attorneys' fees and expenses Defendants would pay, but ultimately had the mediator decide that issue.  Izard Decl. ¶ 5.

The negotiations at the mediation sessions and over the next few months were hard fought, further demonstrating their arms'-length nature and the tenacity with which they were conducted.   Izard Decl. ¶ 6.   At all times, the Parties took into account the strengths and weaknesses of the case, the risks involved with further litigation, the likely recovery at trial and on any subsequent appeal, and the burden and expenses of protracted litigation.  Ultimately, the parties agreed to the terms and conditions set forth in the Settlement Agreement and its attachments. *See* Izard Decl., Ex. 1.

On May 20, 2016, Plaintiffs filed a Motion for Preliminary Approval with the Court, which was granted by Order dated July 12, 2016 [ECF No. 53].  The Order gave preliminary

approval to the settlement, preliminarily certified the Class, appointed Plaintiff as Class Representative and her counsel as Class Counsel, approved the form and method of providing notice to the Class, and set a date for the Final Approval Hearing.

In accordance with the Preliminary Approval Order, the approved Class Notice was sent to each person within the Settlement Class who could be identified by the Plan's recordkeeper by first-class mail.   Declaration of Abigail Schwartz, ¶ 10, attached to the Izard Declaration as Exhibit D.   In addition, the Settlement and all of its attachments (including the Notice), as well as the Motion for Preliminary Approval and supporting materials, were published on a dedicated page on the Izard, Kindall & Raabe website (http://ikrlaw.com/file/kemp-delisser-v-st-francis-hospital-medical-center/).   Izarrd Decl. ¶ 8.

## II.     SUMMARY OF THE PROPOSED SETTLEMENT

The following is a summary of the principle terms of the Settlement:

### A.     The Class Settlement Amount

The Settlement will be funded by contributions to the Plan totaling one hundred and seven million dollars ($107,000,000) to be paid over a ten-year period.   Settlement § 8.1.2. Specifically, Saint Francis Hospital and Medical Center will make a one-time contribution of seventeen million dollars ($17,000,000) to the Plan for funding.   *Id*. at § 8.1.1.   Thereafter, Saint Francis will make nine annual contributions to the Plan for funding in the amount of ten million dollars ($10,000,000) a year.   *Id*. at § 8.1.1.   These funds shall constitute the Class Settlement Amount.   *Id*. at § 8.1.2.   The first of these monies will be contributed to the Plan sixty (60) days after the Final Approval Order approving the Settlement becomes final.   *Id*. at § 8.1.1.

### B.     Agreed Upon Plan Provisions

Provided that the Plan continues to be maintained and established by Saint Francis, Saint Francis will guarantee the accrued benefits payable to Participants under the terms of the Plan for

5

a period of fifteen (15) years commencing on the Effective Date of Settlement.  *Id*. at § 9.2.  This obligation will remain in effect for fifteen years barring a significant change in the law applicable to church plans.  *Id*. at § 9.9. This provision is critical in that Saint Francis, as a church plan, currently has no legal obligation to fund the Plan.

### C.  Trinity Shall Lend To Insure Funding

The Settlement provides that in the event Saint Francis is unable to meet its obligations described in A and B above, then Saint Francis agrees to borrow, and its corporate parent, Trinity Health Corporation ("Trinity"), will allow Saint Francis to borrow, any shortfall from an intercompany loan program in order to assure these contributions will be made to the Plan. This provision ensures that Trinity's financial strength stands behind the funding obligation. *Id*. at §§ 8.1.1 and 9.2.

### D.  Settlement Class

The Settlement contemplates that the Court will certify a non-opt-out class comprised of all present and past (vested or non-vested) Plan participants or beneficiaries under Federal Rules of Civil Procedure 23(a) and 23(b)(1) and/or (b)(2).  *Id*. at §§ 1.18 and 3.2.2

### E.  Released Claims

Section 4 generally defines the Released Claims as claims brought by Plaintiff or claims that could have been asserted by Plaintiff.  *Id*. at § 4.  However, the Settlement does not release claims under state law, any prospective claims that could be brought in the case that the Roman Catholic Church disassociates itself from the Plan's sponsor or there is a change in the law that clearly provides that the Plan is not a church plan.  *Id*. at §§ 4.1.2, 4.1.3, 4.1.4.

### F.  Payment to Plaintiff's Counsel

The Settlement provided that Class Counsel would seek an award of attorneys' fees not to exceed $800,000 and an award of not more than $50,000 in total for expenses actually incurred

and for an Incentive Fee for Plaintiff. *Id.* at § 8.1.3.[2]  The attorneys' fees, expenses, and Incentive Fee are to be paid by Defendants separate from the Class Settlement Amount and will not reduce that contribution. *Id.*  The Settlement Class was notified of these details in the Class Notice.

As set forth below, the history of the litigation, the claims asserted, the related motion practice, negotiations and substance of the Settlement, the substantial risks presented by continued litigation, the uncertainty of a recovery over and above the relief in the Settlement, and the immediate benefit to be provided to the Settlement Class all demonstrate that the Settlement should be approved.

## ARGUMENT

The proposed Settlement is an outstanding result for the Class.  Indeed, the Settlement provides a substantial recovery in a case where Plaintiff faced considerable obstacles to recovering from Defendants and is certainly within the range of what would be determined to be fair, reasonable and adequate.  As a matter of public policy, settlement is a highly favored means of resolving complex class action litigations.  *See Wal-mart Store Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements particularly in the class action context.") (citation omitted); Newberg & Conte, NEWBERG ON CLASS ACTIONS § 13.44 (5th ed. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.")

---

[2] As discussed in Plaintiff's Motion for and Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Award, filed contemporaneously herewith, Plaintiff's request for an incentive award, together with Counsel's request for reimbursement of expenses, is substantially less than $50,000.00.

**III.**     <u>**THE SETTLEMENT SHOULD BE APPROVED**</u>

Approval of a class action settlement is within the broad discretion of the trial court, which should exercise that discretion in light of the policy favoring settlement. *See, e.g. Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

The Second Circuit has identified a number of factors that are relevant in determining whether a settlement is fair, reasonable and adequate: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"). Plaintiff respectfully submits that an analysis of the relevant *Grinnell* factors demonstrates that the settlement merits approval.

All of the *Grinnell* factors should be considered in light of the fact that the settlement was the result of a hard-fought mediation. "[A] court will presume that a proposed class action settlement is fair when certain factors are present particularly evidence that the settlement is the product of arms'-length negotiation, untainted by collusion." Newberg & Conte, NEWBERG ON CLASS ACTIONS § 13.45 (5th ed. 2014); *see also Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (same). Courts in the Second Circuit have noted that there is a strong presumption of fairness where, as here, the parties have negotiated at arms'-length with the assistance of a mediator. *See e.g., McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re Painewebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997); *Michael Milken &*

*Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).   For these reasons as well as those detailed below, the Settlement satisfies the criteria for preliminary approval.

## A.   The Complexity, Expense and Likely Duration of the Litigation

Courts have consistently recognized the complexity, expense and likely duration of litigation as critical factors in evaluating the reasonableness of a class action settlement.  *See, e.g., Charron v. Weiner*, 731 F.3d 241, 247 (2d Cir. 2013); *see also Strougo ex rel., Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing action through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money make future recoveries less valuable than this current recovery.").

Plaintiff recognizes that there is a risk that the ultimate outcome of the litigation will not be favorable.   ERISA breach of fiduciary duty cases are highly complex, involve a comprehensive statutory scheme and involve evolving and developing jurisprudence.   That complexity is increased here, where the underlying claims concern the Plan's alleged mischaracterization as a church plan and consequently implicate a relatively new area of litigation and jurisprudence.   While Defendants disagree vigorously, Class Counsel believe that pursuant to ERISA, only a church can establish a church plan and that the Plan at issue here is not maintained or administered by a church, but rather by SFH, a hospital.   Plaintiff believes that SFH improperly classified the Plan as a church plan in an effort to make it exempt from the requirements of ERISA, which was enacted to protect "the interest of participants in employee benefit plan and their beneficiaries by setting out substantive regulatory requirements." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation marks and citations omitted). However, Plaintiff is aware that this court, the Second Circuit or the Supreme Court might have reached a different conclusion at any stage of the litigation.

Litigation of this case would have no doubt been lengthy and expensive on account of extensive briefing and potential appeals of resulting opinions, a complex discovery program and related discovery disputes, the use and examination of experts, preparation for and engagement in trial, and potential post-trial motions.  While Plaintiff continues to believe that the action has merit and would ultimately prevail at trial, continued litigation would last for an extensive period of time before a final judgment might be entered in favor of the class.  Moreover, since the legal issue at the heart of the case is a matter of first impression in the Second Circuit, a lengthy appeal of any judgment would be extremely likely.  Approval of the Settlement Agreement, however, ensures that the Plan and Settlement Class will receive guaranteed monetary and non-monetary consideration now, without further delay.

### B.  The Stage of the Proceedings

The stage of the proceedings and the amount of information available to the settling parties to help them assess the strengths and weaknesses of their cases is one factor that courts consider in determining the fairness reasonableness and adequacy of a settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *see also* MANUEL FOR COMPLEX LITIGATION §30.42 (3d ed. 1995) (the extent of discovery conducted helps to determine the parties' grasp of the strengths and weaknesses of a case).  However, the absence of formal discovery is not an obstacle to settlement approval if the parties and the Court have enough information to evaluate the claims and defenses presented by a case.  *See Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

Although formal discovery had not commenced at the time of the settlement negotiations, Class Counsel had conducted an extensive investigation into the facts, circumstances and legal

issues associated with the allegations made in the Action.  This investigation included, *inter alia*: (a) inspecting, reviewing and analyzing documents relating to Defendants and the Plan; (b) researching the applicable law with respect to the claims asserted in the Action and the defenses and potential defenses thereto; (c) inspecting, reviewing and analyzing documents concerning administration of the Plan, including the Plan's actuarial report; (d) consulting with an expert actuary concerning the Plan's funding status and potential funding remedies that could be achieved through this litigation  and (e) participating in lengthy settlement negotiations with Defendants' counsel, presided over by mediator Robert A. Meyer, Esq.  Izard Decl., ¶ 4. Moreover, this is not a case that was likely to turn on facts only in Defendant's possession: its ability to rely upon the ERISA exemption for church plans was largely based on facts in the public domain which Plaintiff detailed in the Complaint and the application of law to those facts. Had settlement negotiations not been initiated, Class Counsel was certainly prepared to oppose Defendants' motion to dismiss and vigorously pursue discovery.  That the proceedings had yet to reach that stage does not undermine the settlement given Class Counsel's thorough investigation and knowledge acquired to date.

### C.     The Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial

In considering whether to approve the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See Grinnell*, 495 F.2d at 463.  As discussed throughout, Plaintiff and Class Counsel strongly believe in their claims and their ability to ultimately prevail should the case continue through trial.  However, there is risk in all litigation and Plaintiff recognizes that there could be hurdles to proving liability and damages.  As Defendants pointed out in their motion to dismiss, cases such as these are relatively new, and courts have come to various

conflicting conclusions. No court in the Second Circuit has ruled. It follows that jurisprudence in this area is developing and unpredictable.  If the Settlement is not approved, Plaintiff would have to oppose and defeat Defendants' motion to dismiss, conduct fact and expert discovery, obtain class certification, and prevail at trial and, likely, on appeal.  Plaintiff is aware of the risks associated with each of those steps and also acknowledges that Defendants are represented by experienced and skilled counsel who will continue to vigorously defend against the Action.  In light of these potential hurdles, the settlement should be viewed as an excellent result.

### D.  The Ability of Defendant to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by the settlement.  Although the Defendants could likely afford an even greater amount, this factor is not determinative and does not detract from the great result for the Plan and its beneficiaries.  *See In re Painewebber Ltd.P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."); *Kochilas v. National Merchant Services, Inc.*, No. 14-cv-0311, 2015 WL 5821631, at *6 (E.D.N.Y. Oct. 2, 2015) (same).

### E.  The Reasonableness of the Settlement

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y

2000)).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423 at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The Settlement, is fair, reasonable and adequate when considering what Plaintiff and the Class might have achieved in the litigation, balanced against the expense and risk that Plaintiff and the Class would incur by litigating this case through trial and appeal.  Even considered in isolation, the $107 million recovery represents over 76 percent of the $140 million underfunding amount alleged in the Complaint.  Yet in addition to this very substantial amount, the Class will also receive a 15-year guarantee of accrued benefits by Defendant backed by its corporate parent.

## F.  **The Reaction of the Class**

The deadline for Class Members to object to the Settlement is October 5, 2016, to permit Class Members to review this Motion, as well as Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Award to Class Representative before taking a position on the Settlement.  Accordingly, it is too soon to make a definitive statement with respect to this *Grinnell* factor.  However, as of this point in the litigation, over five weeks

after the Settlement Class received notice of the Settlement, no objections to the Settlement have been filed.[3]  To date, therefore, it appears that this factor should weigh in favor of the Settlement.

## IV.     A SETTLEMENT CLASS SHOULD BE CERTIFIED

In connection with granting approval of the Settlement, the parties have stipulated to a proposed Settlement Class.  Class certification must meet the requirements of Federal Rule of Civil Procedure 23, regardless of whether certification is sought pursuant to a contested motion or, as here, pursuant to a settlement.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 619-29 (1997).  Thus, the Court may certify the proposed class at this time upon finding that the action satisfies the four prerequisites of Rule 23(a) and one or more of the three subdivisions of Rule 23(b).

For purposes of settlement only, Plaintiff seeks, and Defendants consent, to: (i) the designation of Plaintiff as representative of the Settlement Class; (ii) the designation of Izard, Kindall & Raabe, LLP and McCarthy, Coombes and Costello LLP as Class Counsel for the Settlement Class; and (iii) conditional certification of a non-opt out class in the action pursuant 23(b), defined as follows: All present or past participants (vested or non-vested) or beneficiaries of the Saint Francis Hospital and Medical Center Pension Plan as of the Effective Date of Settlement.

Named Plaintiff brought this litigation seeking relief on behalf of the Plan and its participants for claims based on Defendants' alleged breaches of their fiduciary duties.  Named Plaintiff's Plan-wide claims for breach of fiduciary duty under ERISA are well suited for class certification.  Courts in this Circuit have often certified ERISA claims for breach of fiduciary duty for class treatment.  *See, e.g. In re AOL Time Warner ERISA Litig.*, No 02-cv-8853, 2006

---

[3] In the event that any objections are received by the October 5, 2016 deadline, Class Counsel will address them in a subsequent filing in accordance with the Preliminary Approval Order.

WL 2789862 (S.D.N.Y. Sept. 27, 2006) (certifying class for settlement purposes); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) (same).  Congress has also acknowledged the appropriateness of using representative actions to enforce ERISA.  *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (noting Congress' intent that ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole.").  Thus, this Action, which seeks relief on behalf of the Plan as a whole, is precisely the type of case that should be certified pursuant to Federal Rule of Civil Procedure 23.

### A.  The Proposed Class Satisfies the Requirements of Rule 23(a)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, Plaintiff alleges that the Defendants have thousands of employees and many if not all of them are likely to be members of the Class.  *See* Complaint ¶ 44.  Thus, the Settlement Class is too large for joinder to be practicable.

Rule 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class."  Actions for breach of fiduciary duties under ERISA often present common questions of law and fact.  *See In re AOL Time Warner ERISA Litig.*, 2006 WL 2789862, at *2 (S.D.N.Y. 2006) ("In the context of an ERISA action claiming breach of fiduciary duty, class members are related by virtue of their common membership in a retirement plan.").  Here, there are common questions concerning whether the Plan qualifies as a church plan thereby making it exempt from ERISA and whether the Defendants have breached their fiduciary duties under ERISA by improperly funding and administering the Plan.  These issues are common to the Settlement Class.

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  Typicality is satisfied where the proposed class representative's claims "arise from the same course of conduct that gives rise to the claims of

other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *Id.* (quoting *In re Oxford Health Plans, Inc.*, 1919 F.R.D. 369, 375 (S.D.N.Y. 2000)).  The claims of the Named Plaintiff arise from the same conduct of the Defendants as do the claims of the Class and seek the same relief on behalf of the Plan, making them typical for purposed of Rule 23(a)(3).

Rule 23(a)(4) requires that the class representatives will "fairly and adequately protect the interest of the class."  In assessing adequacy, courts are to consider: "(i) whether the class representatives' claims conflict with those of the class and (ii) whether class counsel is qualified experienced, and generally able to conduct the litigation." *Id*.

Both prongs of the adequacy requirement are met.  The Named Plaintiff's interests are fully aligned with those of absent Class members because she brings the same claims for the same remedies under the same legal theories.  There is no antagonism between the Named Plaintiff and the Class at all seek to increase the retirement security of the Plan.  Moreover, as discussed with respect to Rule 23(g) below, Named Plaintiff retained qualified counsel with extensive experience in class actions, including those based on alleged ERISA violations.  Class Counsel accordingly have sufficient knowledge about the applicable law of both class actions in general and ERISA cases in particular.  Accordingly, the adequacy requirement is met.

### B.  The Class Satisfies the Requirements of Rule 23(b)(1)

A class may be certified under Federal Rule of Civil Procedure 23(b)(1) if, in addition to meeting the requirements if Federal Rule of Civil Procedure 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interests of absent members.  Fed. R. Civ. P. 23(b)(1)(A) and (B).  "Class

actions are generally well-suited to litigation brought pursuant to ERISA." *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02-cv-4816, 2004 WL 2211664, at *3 (S.D.N.Y. Oct. 4, 2004) (certifying ERISA claims for breach of fiduciary duty pursuant to Rule 23(b)(1) since '[a]ny adjudication with respect to individual members of the class will as a practical matter be dispositive of the interests of the other members of the class."); *see also In re Schering Plough ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (finding that "the derivative nature of ERISA §502(a)(2) claims are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class."); *Taylor v. United Technologies Corp.*, No. 06-cv-1494, 2008 WL 2333120, at *6 (D. Conn. June 3, 2008) ("ERISA actions alleging breach of fiduciary duty affecting a large class of beneficiaries presents a paradigmatic example for application of Rule 23(b)(1)") (internal quotations omitted).

Moreover, this action for breach of fiduciary duty under ERISA is by law a representative action seeking to impose on the Defendants obligations applicable to all the Plan Participants. *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) (holding that certification for violations of ERISA is proper under Rule 23(b)(1)); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (certifying class under Rule 23(b)(1)). "[T]he Advisory Committee Notes to the 1966 Amendment of Rule 23(b)(1)(B) specifically state that certification is especially appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010).  Given the relief obtained in this case, allowing individual opt-outs would create the risk that participants subject to the exact same conduct would not all be treated the same, which is inconsistent with ERISA's duty of impartiality.  *See Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984).  Importantly, however, although an individual Plan participant will not be able to opt-out of the Settlement, all Plan

participants retain the ability to object to the Settlement and express any concerns they may have related to the Settlement, prior to any final approval of the proposed Settlement by the Court. Accordingly, certifying the claims under Rule 23(b)(1) is appropriate in this ERISA action.

### C.   The Class Satisfies the Requirements of Rule 23(b)(2)

A class may be certified under Federal Rule of Civil Procedure 23(b)(2) if the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate the final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Here, Plaintiff alleges that Defendants breached their fiduciary duties to the Plan and its beneficiaries by improperly categorizing the Plan as a church plan.  Plaintiff also contends that Defendants failed to comply with ERISA on a Plan-wide basis and seeks monetary and equitable relief to the Plan as a whole.  As such, the remedy sought is one for equitable relief and is authorized under ERISA.   *See* ERISA §§ 502(a)(2) & (3).

Although the Settlement includes monetary consideration to the Plan, that consideration is incidental to, and flows directly from, Plaintiff's request for equitable relief and is still appropriate for certification under Rule 23(b)(2).  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) ("Where monetary relief would flow automatically to the class as a whole from a grant of equitable relief for breach of fiduciary duty, certification under Rule 23(b)(2) is appropriate."); *see also Berger v. Xerox Corp. Retirement Income Guar. Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003) (same).  Indeed, "when both equitable and monetary relief are sought the district court may still certify the class under subsection (b)(2) if it determines that certification is appropriate in light of the relative importance of the remedies sought, given all the facts and circumstances of the case." *Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165, 173-

74 (D. Conn. 2006) (internal quotation omitted).   Accordingly, Plaintiff's claims are also properly satisfied under Rule 23(b)(2).

### D.  Rule 23 (g) is Satisfied

Federal Rule of Civil Procedure 23(g) requires the Court to examine the capabilities and resources of class counsel.  Class Counsel developed the claims and has already expended time and effort to litigate the action thus far.  Had a settlement not been reached, Class Counsel would have continued to dedicate the necessary time and resources to litigate the Action to conclusion. Moreover, Class Counsel have been involved in many class action and ERISA cases and possess expertise in the ERISA claims brought in this lawsuit.  *See* Firm Resume of Izard, Kindall & Raabe, LLP, attached to the Izard Declaration as Exhibit B, and Declaration of Kevin Coombes. Class Counsel thus satisfy the requirements of Rule 23(g).

### CONCLUSION

Plaintiff respectfully requests entry of an order approving the Settlement, certifying the Class, confirming the appointment of Plaintiff as the Class Representative and the appointment of Izard, Kindall & Raabe, LLP and McCarthy, Coombes & Costello LLP as Class Counsel.

Dated: September 16, 2016

Respectfully submitted,

/s/ Robert A. Izard
Robert A. Izard (CT 01601)
Mark P. Kindall (CT 13797)
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
rizard@ikrlaw.com
mkindall@ikrlaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 16th day of September, 2016, a true and correct copy of the foregoing document was served via the Court's CM/ECF system upon all counsel of record.

By:      /s/ Mark P. Kindall
Robert A. Izard (CT 01601)
Mark P. Kindall (CT 13797)
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
rizard@ikrlaw.com
mkindall@ikrlaw.com