## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CAROL KEMP-DELISSER, on behalf of herself and all others similarly situated,<br>　　　Plaintiff,<br><br>　　　v.<br><br>SAINT FRANCIS HOSPITAL AND MEDICAL CENTER, SAINT FRANCIS HOSPITAL AND MEDICAL CENTER FINANCE COMMITTEE, SAINT FRANCIS HOSPITAL AND MEDICAL CENTER RETIREMENT COMMITTEE, and JOHN DOES 1-20,<br>　　　Defendants. | No. 15-cv-1113 (VAB) |

## ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES AND EXPENSES AND GRANTING CASE CONTRIBUTION AWARD

Plaintiff, Carol Kemp-DeLisser (the "Plaintiff" or "Named Plaintiff"), on behalf of herself and all others similarly situated, filed a class action complaint against Defendants, Saint Francis Hospital and Medical Center ("SFH"), the Saint Francis Hospital and Medical Center Finance Committee (the "Finance Committee"), the Saint Francis Hospital and Medical Center Retirement Committee (the "Retirement Committee"), and John Does 1-20 (the "Committee Members") on July 21, 2015.  ECF No. 1.

Plaintiff alleges that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") by significantly underfunding the St. Francis Hospital and Medical Center Pension Plan (the "Plan").  Compl. ¶ 1, ECF No. 1.  On May 20, 2016, Plaintiff moved for preliminary approval of the Class Action Settlement Agreement negotiated between the parties

1

("Settlement" or "Settlement Agreement").  ECF No. 45.  Following a hearing on the motion for preliminary approval held on July 5, 2016, the Court granted preliminary approval of the Settlement on July 12, 2016.  ECF No. 53.  On September 16, 2016, Plaintiff moved for final approval of the class action settlement, ECF No. 55, and for attorney's fees, reimbursement of litigation expenses, and a case contribution award.  ECF No. 56.  The Court held the final Fairness Hearing on October 19, 2016.

For all of the reasons discussed below, the Court finds that the Settlement is fair, reasonable, and adequate, **GRANTS** the motion for final approval of the class action settlement, and **GRANTS** the motion for attorneys' fees, reimbursement of litigation expenses, and an incentive award for the Named Plaintiff.

I.   **BACKGROUND**

Plaintiff's complaint alleged that the Defendants improperly characterized the Plan as a church plan in order to avoid their obligations under ERISA.  Compl. ¶ 2.  Plaintiff alleged that SFH is a hospital, not a church nor an association of churches, and that SFH's primary business is healthcare, so it is not an organization with the principal purpose or function of providing retirement or welfare benefits.  Approval Br. at 3, ECF No. 55-2.  Plaintiff therefore alleged that the Plan is not a church plan and is not, therefore, exempt from the requirements of ERISA. Compl. ¶¶ 3-4.  Plaintiff further alleged that the Plan was underfunded by $140 million, or approximately 34%.  Compl. ¶ 1.

Plaintiff filed the complaint through her counsel, Izard Nobel LLP and McCarthy, Coombes & Costello LLP (collectively, "Class Counsel"), who conducted a factual investigation of the case and evaluated all pertinent legal issues prior to filing the complaint.  Izard Decl. ¶ 2, ECF No. 55-3.  Class Counsel are experienced in handling class actions, other complex

litigation, and claims of the type asserted in this litigation, and are knowledgeable about the law applicable to this case.  Izard Firm Resume, Izard Decl. Ex. B, ECF No. 55-5; Coombs Decl. ¶ 3, ECF No. 55-8.

Defendants previously filed a motion to dismiss, arguing that ERISA's statutory text, case law, and administrative agency interpretations all support the conclusion that the Plan is church plan that is exempt from ERISA's requirements.  ECF No. 32.  The issue of whether a non-church entity, such as SFH, can nonetheless establish a church plan that is exempt from ERISA's requirements is an issue of first impression in the Second Circuit.  Approval Br. at 9-10.  Other circuit courts have reached conflicting conclusions regarding whether a non-church entity could establish a church plan exempt from ERISA.  Fee Br. at 10-11.

Nonetheless, before the motion to dismiss was fully briefed, the parties agreed to mediation before Robert A. Meyer (the "Mediator"), who is experienced with mediating large, complex matters similar to this case, including other ERISA class actions.  Izard Decl. ¶ 3.  The parties agreed to mediation out of a desire to avoid the burden, expense, and uncertainty of continued litigation.  *Id.*

### A.      Settlement Negotiations and Mediation

The mediation process involved the production of documents, the submission of letter briefs to the Mediator, and two meetings with the Mediator, one in New York on December 9, 2015 and one in Los Angeles on February 18, 2016, to discuss the merits of the case and various issues with regards to liability, causation, and damages.  Izard Decl. ¶ 4.  As part of the mediation process, Defendants produced an actuarial report and other documents to Plaintiff, and Plaintiff also obtained and produced to Defendants her own actuarial report concerning both liability and damages.  *Id.*

Following the second meeting on February 18, 2016, the parties successfully reached an agreement-in-principle to settle the case and, at the conclusion of the meeting, signed a term sheet reflecting the material terms of the agreement.   Izard Decl. ¶ 4.  The parties then finalized the terms and conditions of the Settlement Agreement, which was executed on May 20, 2016.  I *Id.* ¶ 6.  The parties then submitted the Settlement to the Court with the motion for preliminary approval.  *Id.*

As to attorneys' fees, the term sheet indicated that Defendants would pay Plaintiff's attorneys' fees and expenses, in an amount to be negotiated between the parties.  Izard Decl. ¶ 4. The term sheet further indicated that the Mediator would act as the final arbiter with respect to any disagreement regarding Plaintiff's reasonable fees and expenses.  *Id.*  The parties agreed to submit the issue of fees and expenses to the Mediator, who determined that a reasonable fee would be $800,000, plus reimbursement for expenses actually incurred, not to exceed $50,000. *Id.*  At the Fairness Hearing, the parties noted that the decision to defer to the Mediator regarding fees and expenses was a joint one based on the sensitivity of the fee issue in any class action and the parties' mutual respect for the Mediator's ability to decide the most fair and reasonable fee award in this case.

### B.  The Settlement Agreement

The Settlement Agreement provides, in part, that SFH shall contribute a total of $107 million (the "Settlement Amount" or "Settlement Fund") to the Plan over a period of ten years, consisting of a one-time payment of $17 million sixty days after "the Final Approval Order approving the settlement becomes Final" and a $10 million payment every year thereafter, for nine years.  Settlement Agreement § 8.1.1, Izard Decl. Ex. A, ECF No. 55-4.  Additionally, the Settlement Agreement further provides that SFH will guarantee benefit payments from the Plan

4

for a period of 15 years, beginning from the date the Settlement becomes final.  Settlement

Agreement § 9.2.  If SFH is unable to guarantee the benefit payments during that fifteen-year

period, SFH agrees to borrow needed amounts from Trinity Health Corporation ("Trinity"),

SFH's parent company.  *Id.*

   With regards to attorneys' fees, the Settlement Agreement provides that Defendants will

not oppose Plaintiff's motion to the Court for attorney's fees, not to exceed $800,000, or for

actually incurred expenses and/or an incentive fee for the Named Plaintiff, not to exceed $50,000

in the aggregate, in accordance with the agreement the parties reached during mediation.

Settlement Agreement § 8.1.3.

   The class of individuals affected by the Settlement Agreement includes "[a]ll present or

past participants (vested or non-vested) or beneficiaries of the Plan" as of the date the Settlement

becomes final (the "Settlement Class").  Settlement Agreement § 1.18.  Because the Plan was

already closed as of the date of the July 5, 2016 preliminary approval hearing, the Settlement

Class is a finite group consisting of roughly 7,200 Plan participants and beneficiaries.  Prelim.

Approval Trans. 11:7-19, ECF No. 52.

### C.   Preliminary Approval

   The Court held a hearing on July 5, 2016 to consider the motion for preliminary approval

of the Settlement Agreement.  ECF No. 51.  During the hearing, the parties discussed, among

other things, the terms of the Settlement Agreement, the merits of Plaintiff's underlying claims,

and the considerable uncertainty of the law governing the claims.  Prelim. Approval Trans. 4:1-

8:8.  The parties also discussed the legal requirements for both preliminary and final approval as

well as the parties' proposals for how to proceed with giving notice to class members.  *Id.* at

14:8-24:11.

On July 12, 2016, the Court issued an order granting preliminary approval of the

Settlement Agreement.  ECF No. 53.  The order provided, among other things:

- that the Settlement Class was preliminarily certified under Federal Rules of Civil Procedure 23(b)(1) and/or (2) and 23(e), and Class Counsel was preliminarily appointed as counsel for the Settlement Class, Prelim. Order at 4, ECF No. 53;

- that the proposed Settlement Agreement resulted from (a) informed, extensive arm's-length negotiations, including participation in mediation with an experienced mediator, (b) Class Counsel had concluded that the proposed Settlement is fair, reasonable and adequate, (c) the proposed Settlement has no obvious deficiencies and did not improperly grant preferential treatment to the class representative or segments of the class, (d) the proposed Settlement fell within the reasonable range of possible approval, and (e) the proposed settlement was therefore sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class, *Id.* at 7;

- that the proposed form of Class Notice, attached to the order as Exhibit A ("Class Notice"), fairly and adequately (a) described the terms and effect of the Settlement Agreement, (b) notified the Settlement Class that Class Counsel's attorneys' fees and expenses, and Named Plaintiff's incentive fee, would be determined in the sole discretion of the Court and paid according to §§ 8.1.3 and 8.1.4 of the Settlement Agreement, (c) gave notice to the Settlement Class of the time and place of the Final Fairness Hearing, and (d) described how the recipients of the Class Notice could object to any of the relief requested, *Id.* at 7-8;

- that the parties' proposed method of distributing Class Notice was sufficient, *Id.* at 8;

- that Class Counsel should, no later than 75 days before the Final Fairness Hearing, distribute the Class Notice to each person in the Settlement Class with Defendants to pay the cost for distributing the notice, cause the Settlement Agreement and the Class Notice to be published on the website identified in the Class Notice, file with the Court a proof of timely compliance with these notice requirements, and, no later than 31 days before the Final Fairness Hearing, Class Counsel should file motions for final approval of the Settlement, attorney's fees and expenses, and an incentive  fee for Plaintiff, *Id.* at 8;

- procedures for members of the Settlement Class to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, or to any term of the Settlement, to the application for payment of attorneys' fees and expenses, or to the application for an incentive fee for Plaintiff, *Id.* at 8.

The Court's preliminary approval order also scheduled the Final Fairness Hearing for

October 19, 2016 (the "Fairness Hearing"), and stated that, at the hearing, the Court would

determine, among other things:

- (1) Whether the Settlement should be approved as fair, reasonable, and adequate;

6

- (2) Whether the Complaint should be dismissed with prejudice pursuant to the terms of the Settlement Agreement;

- (3) Whether the Class Notice provided for by the Settlement Agreement: (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Final Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law;

- (4) Whether Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement;

- (5) Whether the application for payment for attorneys' fees and expenses to Class Counsel should be approved; and

- (6) Whether the application for an incentive fee for the Named Plaintiff should be approved.

Prelim. Order at 11.

### D.    Notice to the Class

The parties engaged a third party, Rust Consulting ("Rust"), to administer notice to the Settlement Class.  Schwartz Decl. ¶¶ 1-5, Izard Decl. Ex. D, ECF No. 55-7.  Consistent with the Court's preliminary approval order, Rust mailed the Class Notice on August 5, 2016 to the 7,224 class members who could be identified by the Plan's recordkeeper, using first-class mail.  Izard Decl. ¶ 7; Schwartz Decl. ¶ 10.  The Class Notice advised class members of the Settlement's terms and how they could object to the Settlement, if they so desired.  Schwartz Decl. ¶ 10; Class Notice at 8-10, Settlement Agreement Ex. A, ECF No. 55-4.

Of the 7,224 Class Notices that Rust mailed out, 1,223 were returned as undeliverable. Schwartz Decl. ¶ 11.  Of the 1,223 Class Notices that were returned as undeliverable, Rust performed address traces for all 1,223 mailings.  *Id.*  From the 1,223 traces, Rust was able to obtain 970 more current addresses, and Rust promptly re-mailed Class Notices to those 970 addresses.  *Id.*  Rust was not able to obtain updated addresses for 253 of the 1,223 undeliverable

Class Notices.  *Id.*  Seven copies of the Class Notice were also returned to Rust with forwarding addresses, and Rust promptly re-mailed those Class Notices.  *Id.* ¶ 12.  During the Fairness Hearing, Class Counsel provided an update regarding the number of Class Notices that were sent, noting that 7,724 were mailed, 1,331 were returned, and that, after traces were performed, only 371 Class Notices remained undeliverable.

The Settlement and all of its attachments, including the Class Notice, were also published on a dedicated page of the Izard, Kindall & Raeebe LLP website (http://ikrlaw.com/file/kemp-delisser-v-st-francis-hospital-medical-center/) on July 12, 2016.  Izard Decl. ¶ 8.  The website also included copies of the motion for preliminary approval of the Settlement Agreement and all supporting materials.  *Id.*

As part of the class notice procedure, Rust also obtained a case-specific toll-free telephone number where Class Members could call with questions regarding the Settlement. Schwartz Decl. ¶ 14.  Callers were prompted to listen to a recorded introductory message before selecting an option from an automated menu system designed to answer frequently asked questions about the Settlement.  *Id.*  As of September 13, 2016, approximately 326 calls were received at the case-specific toll-free number.  *Id.*  During the Fairness Hearing, Class Counsel reported that 331 total calls had been received at the case-specific toll-free number.

 Pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. § 1711, *et. seq.* ("CAFA"), the parties also sent a letter, on May 27, 2016, to the United States Attorney General ("CAFA Notice").  Saper Decl. ¶ 3, ECF No. 59.  Similar CAFA Notices were also sent to the Attorney Generals of all fifty United States, the District of Columbia, and the United States territories.  *Id.*  Each CAFA Notice complied with the requirements of 28 U.S.C. § 1715(b).  *Id.* ¶ 4.  Among other things, each CAFA Notice explained the definition of the Settlement Class and

provided a reasonable estimate of the number of class members in each state, in addition to attaching copies of the Settlement Agreement and proposed Class Notice to the class members. *Id.* The only response to any of the CAFA Notice mailings was an email confirming receipt from the Attorney General of the State of Washington, dated June 30, 2016. *Id.* ¶ 5. At the Fairness Hearing, the parties confirmed that there were no objections in response to the CAFA Notices.

As of October 19, 2016, the date of the Fairness Hearing, none of the parties or Rust had received any objections from any member of the Settlement Class to any aspect of the Settlement Agreement or the proposed award of attorneys' fees, expenses, or an incentive payment for Plaintiff. No objections to the Settlement were filed with the Court.

**E.     Fees, Costs, and Incentive Award**

Plaintiff's motion requests that the Court (1) grant $800,000 in attorneys' fees to Class Counsel, (2) grant $19,611.71 as reimbursement of litigation expenses to Class Counsel, and (3) award Plaintiff $2,000.00 as a case contribution or incentive award, all of which Defendants will pay to Plaintiff and Class Counsel separately from the Settlement Amount, in accordance with the provisions of the Settlement Agreement. ECF No. 56.

The Mediator, with the parties' agreement, had proposed that the reasonable attorneys' fees and expenses in this case would be $800,000 in fees, plus reimbursement for expenses actually incurred, not to exceed $50,000. Izard Decl. ¶ 5. Although the Mediator's determination does not appear to have been based on a lodestar calculation, the proposed $800,000 fee award represents a "multiplier of 2.77 compared to Class Counsel's lodestar." Fee Br. at 2. While the fee award will be paid directly by Defendants and will not come out of the

9

Settlement Fund, had the $800,000 proposed fee award come out of the $107 million dollar settlement instead, it would have been only 0.7% of the Settlement Fund. *Id.* at 14.

In support of the request for $800,000 in attorneys' fees, Class Counsel provided a breakdown of attorney's fees incurred in litigating this class action. Izard, Kindall, & Raabe LLP spent 411.75 attorney hours litigating this case, which, at each attorney's normal billing rate, resulted in a lodestar fee amount of $262,017.50. Izard Decl. ¶¶ 9-10. McCarthy, Coombes, & Costello LLP spent 40.4 attorney hours litigating this case, which, at each attorney's normal billing rate, resulted in a lodestar fee amount of $26,215.00. Coombes Decl. ¶¶ 4-5, ECF No. 55-8. The total lodestar amount for Class Counsel is, therefore, $288,322.50. Fee Br. at 18. A partner at each firm reviewed the time and expense reports associated with this case and certified that the hours spent on this case were reasonable in amount and necessary for the effective and efficient prosecution and resolution of this litigation. Izard Decl. ¶ 9; Coombes Decl. ¶ 4.

In support of the request for $19,711.71, as reimbursement of litigation expenses actually incurred, Class Counsel provided a breakdown of the exact expenses incurred in litigating this class action. Izard, Kindall & Raabe LLP incurred $19,592.71 total in expenses while litigating this case, which are broken down as follows:

| | |
|---|---|
| Experts: | $3,375.00 |
| Mediation: | $13,160.00 |
| Travel: | $2,766.58 |
| Service of Process: | $198.10 |
| Postage & Delivery: | $15.83 |
| Pacer: | $77.20 |

Izard Decl. ¶ 11. McCarthy, Coombes, & Costello LLP incurred $119.00 in travel expenses while litigating this case. Coombes Decl. ¶ 6. A partner at each firm certifies that the expenses incurred while litigating this case were all reasonable and necessary for the efficient prosecution

10

and resolution of this class action and are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.  Izard Decl. ¶ 9; Coombes Decl. ¶ 4.

Ms. Kemp-DeLisser agreed to serve as the representative plaintiff in this case after meeting with Richard Izard of Izard, Kindall, & Raabe LLP to discuss the obligations of a lead plaintiff in a class action.  Kemp-DeLisser Decl. ¶¶ 4-5, Izard Decl. Ex. C, ECF No. 55-6.  As the representative plaintiff, Ms. Kemp-DeLisser participated in the litigation in the following ways: (1) by going through her documents to find anything she had that related to the Plan and providing such documents to Class Counsel; (2) by reviewing court documents and discussing them with Class Counsel; (3) by engaging in regular communications with Class Counsel regarding the status and strategy of the case; (4) discussing mediation and settlement issues with Class Counsel; and (5) approving the proposed settlement.  *Id.* at ¶ 6.  At the Fairness Hearing, Class Counsel also noted that, as the named plaintiff, Ms. Kemp-DeLisser took on the burden of going on the public record and being identified with the litigation of this case, which inherently carries some risk of additional scrutiny, especially with the ease of Internet access to Court records.

### F.    Fairness Hearing

The Court held the Fairness Hearing on October 19, 2016 at 10:00 AM.  ECF No. 60. The parties confirmed that Class Notice had been sent out, in accordance with the Court's preliminary approval order.  The parties also confirmed that the parties had received no objections to the Settlement Agreement.  As of October 19, 2016, the Court also received no objections to the Settlement Agreement, and no objectors appeared at the Fairness Hearing.

11

II.     **DISCUSSION**

A.     **The Settlement is Fair, Reasonable, and Adequate**

Rule 23(e) provides that class actions may only be settled with the Court's approval.

Fed. R. Civ. P. 23(e).  Courts have discretion over whether to approve the class action settlement.

*See In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004)

(citing  *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir.

1992)).  Before granting approval, "the district court must determine that a class action

settlement is fair, adequate and reasonable, and not a product of collusion."  *Joel A. v. Giuliani*,

218 F.3d 132, 138 (2d Cir. 2000).  In exercising its discretion to determine whether a class action

settlement is fair, a court "should give proper deference to the private consensual decision of the

parties" and "keep in mind the unique ability of class and defense counsel to assess the potential

risks and rewards of litigation."  *Clark v. Ecolab, Inc.*, No. 04-CIV-4488 (PAC), 2009 WL

6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted).  Courts should be

"mindful of the strong judicial policy in favor of settlements, particularly in the class action

context" as "[t]he compromise of complex litigation is encouraged by the courts and favored by

public policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005)

(internal quotation marks omitted).

When deciding whether a class action settlement is fair, adequate, and reasonable, a

court's "primary concern is with the substantive terms of the settlement," which involves a "need

to compare the terms of the compromise with the likely rewards of litigation."  *Weinberger v.*

*Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982).  A court must also consider the settlement's

procedural fairness by examining "the negotiating process by which the settlement was reached."

*Id.* at 74.  "So long as the integrity of the arm's length negotiation process is preserved, however,

a strong initial presumption of fairness attaches to the proposed settlement." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

### 1.      The Settlement is Substantively Fair

The Second Circuit has identified nine factors, discussed in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), that a court should consider in determining whether a class action settlement is substantively fair:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  For a settlement to be substantively fair, "not every factor must weigh in favor of settlement," rather, "the court should consider the totality of these factors in light of the particular circumstances." *Global Crossing*, 225 F.R.D. at 456 (internal quotation marks omitted).

After analyzing the *Grinnell* factors, and for the reasons laid out below, the Court finds that the proposed settlement is fair, adequate and reasonable.

### a.      Complexity, Expense, and Likely Duration of Litigation

The first *Grinnell* factor addresses "the complexity, expense and likely duration of the litigation." *Grinnell*, 495 F.2d at 463.  Many courts recognize the particular complexity of ERISA breach of fiduciary duty cases such as this one.  *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty company stock claims.").  This is in addition to the "general risk inherent in litigating complex claims . . . to their conclusion." *Id.* (internal quotation marks

omitted).  The Court is satisfied that this factor weighs heavily in favor of the approving the settlement.

Litigation of this case through trial would have been extremely complicated, time-consuming and expensive.  This case hinged on the legal question of whether SFH, a Catholic Church-affiliated hospital, could establish a church plan exempt from ERISA's requirements, which is an issue of first impression in the Second Circuit.  Approval Br. at 9.  Other circuit courts have reached conflicting conclusions regarding this question, indicating that litigation would have been especially risky for the class.  Fee Br. at 10-11.  Had the case proceeded through litigation, the process would have been lengthy and expensive due to the need for extensive briefing, complex discovery, the need for and preparation of expert witnesses, motions practice, preparation for trial, and potential post-trial motions.  *Id.* at 9-10.

Because the core legal question of whether a church-affiliated entity like SFH may establish a church plan is an unsettled legal issue, appeals of any judgment to the Second Circuit and the Supreme Court would also have been a near certainty, adding to both the duration of litigation and its uncertainty.   *Id.* at 10.  Further litigation could have resulted in an unfavorable result for Plaintiffs at any stage.

### b.        Class Reaction to the Settlement

The second *Grinnell* factor analyzes "the reaction of the class to the settlement." *Grinnell*, 495 F.2d at 463.  A lack of objection from any class members after members received notice of the settlement "is an extremely strong indication" that the proposed Settlement is fair. *Marsh*, 265 F.R.D. at 139.  Because none of the roughly 7,200 Settlement Class members objected to any aspect of the Settlement Agreement, this factor also weighs in favor of approving the proposed Settlement.

Under the Court's preliminary approval order, the parties took multiple steps to notify all of the absent Settlement Class members.  Schwarz Decl. ¶¶ 10-14.  The parties retained the services of Rust Consulting to administer the process of providing notice to the class.  Schwarz Decl. ¶¶ 4-5.  As the parties reported during the Fairness Hearing on October 19, 2016, 7,724 Class Notices were mailed out to class members and of these, only 371 Class Notices remained undeliverable following attempts to identify their updated addresses.  Thus, roughly 95.2% of Class Notices were likely to have been successfully delivered to the intended recipients.  Rust also set up a case-specific toll-free telephone number and interactive voice recording system to answer questions regarding the settlement.  Schwarz Decl. ¶ 14.

As of the date of the Fairness Hearing, the toll-free telephone number had received 331 calls.  Additionally, Class Counsel also published the Settlement Agreement and its attachments, including the Class Notice, on a dedicated webpage.  Izard Decl. ¶ 8.  None of the parties received any objections from absent class members, and no objections were filed with the Court. The Settlement Class's reaction to the settlement therefore appears to be favorable, and does not give the Court any reason to doubt the fairness and adequacy of the Settlement Agreement.

### c.       Stage of the Proceedings

The third *Grinnell* factor analyzes "the stage of the proceedings and the amount of discovery completed."  *Grinnell*, 495 F.2d at 463.  This factor explores the information that was available to the settling parties to assess whether Class Counsel "have weighed their position based on a full consideration of the possibilities facing them."  *Global*, 225 F.R.D. at 458. "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."  *Id.*; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) ("Also, the district court properly recognized that, although no formal discovery had

taken place, the parties had engaged in an extensive exchange of documents and other
information.  Thus, the 'stage of proceedings' factor also weighed in favor of settlement
approval.").  The Court finds that this factor also weighs in favor of approval.

Although formal discovery had yet to occur at the time the parties engaged in settlement
negotiations, Class Counsel conducted extensive investigation into the facts, circumstances, and
legal issues associated with this case before agreeing to the Settlement.  Approval Br. at 10-11.
Class Counsel indicates that this investigation included:

> (a) inspecting, reviewing and analyzing documents relating to Defendants and the
> Plan; (b) researching the applicable law with respect to the claims asserted in the
> Action and the defenses and potential defenses thereto; (c) inspecting, reviewing
> and analyzing documents concerning administration of the Plan, including the
> Plan's actuarial report; (d) consulting with an expert actuary concerning the
> Plan's funding status and potential funding remedies that could be achieved
> through this litigation and (e) participating in lengthy settlement negotiations with
> Defendants' counsel, presided over by mediator Robert A. Meyer, Esq.

*Id.* at 11.  Furthermore, this was not a case that was likely to turn on facts initially in Defendant's
sole possession.  *Id.*  Because of the nature of the core legal question, whether the Catholic
Church-affiliated SFM could establish a church plan exempt from ERISA's requirements, most
of the key relevant facts in this case are in the public domain and listed in the Plaintiff's
complaint.  *Id.*

### d.       Risks of Establishing Liability

The fourth *Grinnell* factor analyzes "the risks of establishing liability."  *Grinnell*, 495
F.2d at 463.  As stated above, when discussing the first *Grinnell* factor, the complexity of
litigation, the legal question at the heart of this case, whether SFH can establish a church plan
exempt from ERISA, is an unsettled one and a question of first impression in the Second Circuit.
Other circuit courts have reached conflicting conclusions regarding this issue, and the decisions
favorable to the Plaintiff have been based on conflicting rationales.  Fee Br. at 10.  Defendants'

earlier motion to dismiss, which was still pending when the parties began settlement negotiations, correctly stated that this type of case is relatively new, with only a dozen or so cases on this issue having been filed nationwide since 2013.  Motion to Dismiss Br. 1, ECF No. 32-1.  Accordingly, the law in this area is still developing and is unpredictable, and the possibility of establishing Defendants' liability in this case was extremely uncertain.  This factor therefore weighs in favor of approving the Settlement.

### e.    Risks of Establishing Damages

The fifth *Grinnell* factor analyzes "the risks of establishing damages."  *Grinnell*, 495 F.2d at 463.  As with other ERISA class actions, establishing damages would have been a complicated endeavor, likely requiring complex actuarial analysis.  *See, e.g.*, *Marsh*, 265 F.R.D. at 140.  Even just for the purposes of mediation and settlement discussions, the parties each submitted an expert actuarial report relevant to damages.  Izard Decl. ¶ 4.  As the parties indicated during the preliminary approval hearing, the analysis necessary to prepare those actuarial reports was extremely complex, with Plaintiff's actuary running at least "8 or 10 different models with different discount rate and interest rate assumptions."  Prelim. Approval Trans. 11:2-6.  Furthermore, the mediation process also required a "tremendous amount of exchange . . . about these actuarial calculations and what they meant for both parties."  *Id.* 13:4-10.  This makes clear that, even if Plaintiff had prevailed on the issue of liability at trial, litigating the damages issue would also have carried considerable risk.  The Court finds that this factor also weighs in favor of approving the Settlement Agreement.

### f.    Risks of Maintaining Class Action through Trial

The sixth *Grinnell* factor analyzes "the risks of maintaining the class action through the trial."  *Grinnell*, 495 F.2d at 463.  This factor concerns the risk that the Court would have denied

the named Plaintiff's motion for class certification, "thereby limiting or even precluding any possible recovery for the [c]lass." *Marsh*, 265 F.R.D. at 140. Even if Plaintiff had obtained class certification, the risk of decertification at a later stage would remain. *See Global Crossing*, 225 F.R.D. at 460. This factor also weighs in favor of approving the Settlement.

> **g.      Defendants' Ability to Withstand Greater Judgment**

The seventh *Grinnell* factor analyzes "the ability of the defendants to withstand a greater judgment." *Grinnell*, 495 F.2d at 463. This factor "standing alone, does not suggest that the settlement is unfair," and where the "other *Grinnell* factors weigh heavily in favor of settlement," the Court may still approve of the settlement as being fair, reasonable, and adequate. *D'Amato*, 236 F.3d at 86. "[A] defendant is not required to empty its coffers before a settlement can be found adequate." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015) (internal citations omitted). Thus, even if the Defendants here could afford to pay more than the $107 million Settlement Amount, this does not prevent the Court from approving this Settlement as fair and reasonable.

> **h.      Reasonableness of Settlement Fund in Light of Best Possible Recovery and Attendant Risks of Litigation**

This final two *Grinnell* factors analyze "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463. Courts often combine their analysis of these factors. *See Fleisher*, 2015 WL 10847814 at *10 (analyzing final two *Grinnell* factors together); *Global Crossing*, 225 F.R.D. at 460–61 (same). In analyzing these factors, a court should "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462.

18

Plaintiff's complaint alleged that Defendants underfunded the Plan by roughly $140 million, and the $107 million recovery therefore represents over 76 percent of the amount alleged in the complaint.  Compl. ¶ 1.  In addition, SFH and Trinity have also agreed to guarantee the Plan for a 15 year period, providing additional protection to Settlement Class members.  Settlement Agreement § 9.2.  This result is an extremely favorable one for the class, and the guaranteed payment of the settlement amount and the SFH and Trinity 15-year guarantee "increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road," had the parties proceeded with litigation.  *Global Crossing*, 225 F.R.D. at 461 (internal quotation marks omitted).  In light of the complexity of this case and of the substantial risks associated with litigating this claim, which were discussed above, this settlement is reasonable when considered in light of both the best possible recovery and the attendant risks of litigation.

### 2.      The Settlement is Procedurally Fair

In addition to ensuring the substantive fairness of a settlement by analyzing the Grinnell factors, the Court must also ensure that the settlement is procedurally fair and "not the product of collusion."  *Global Crossing*, 225 F.R.D. at 461.  "[C]ourts have demanded that the compromise be the result of arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."  *Weinberger*, 698 F.2d at 73-74.  When a settlement was negotiated by such "experienced, fully-informed counsel after extensive arm's-length negotiations," the resulting settlement "is entitled to an initial presumption of fairness and adequacy."  *Fleisher*, 2015 WL 10847814 at *5.

Settlement negotiations in this case were conducted with the assistance of an experienced Mediator.  Izard Decl. ¶ 3.  Plaintiff and Defendants produced actuarial reports and documents to each other as part of the mediation process, so that both parties could be well-informed as they proceeded with the negotiations.  *Id.* ¶ 4.  The Settlement Agreement was negotiated across two meetings with the Mediator, one on December 9, 2015 and one on February 18, 2016.  *Id.*  Based on these facts, it is clear that the Settlement Agreement is the product of arms-length negotiations "entitled to a strong initial presumption of fairness."  *Marsh*, 265 F.R.D. at 141 (internal quotation marks omitted).  The "participation of an experienced mediator also reinforces that the Settlement Agreement is non-collusive" and procedurally fair.  *Fleisher*, 2015 WL 10847814 at *5.  In light of the foregoing, the Court finds that this Settlement is procedurally fair.

### B.  Certification of the Settlement Class Under Rule 23 is Proper

Courts may certify a class solely for settlement purposes.  *See Weinberger*, 698 F.2d at 73 (permitting class action settlements "reached by means of settlement classes certified after the settlement, with notice simultaneous with that of the settlement"); *Global Crossing*, 225 F.R.D. at 451 ("The Second Circuit has acknowledged the propriety of certifying a class solely for settlement purposes."); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997).  Regardless of whether a class is certified for settlement or litigation purposes, the class must "meet each of the four requirements in Rule 23(a) and at least one of the requirements in Rule 23(b)."  *Global Crossing*, 225 F.R.D. at 451.  One difference between certifying a litigation class versus a settlement class, however, is that when a court is faced "with a request for settlement-only class certification, [it] need not inquire whether the case, if tried, would present intractable management problems," though a court must otherwise scrutinize the requirements of Rule 23. *Amchem Prod.*, 521 U.S. at 620.

For the reasons that follow, the Court finds that it is appropriate to certify the class for settlement because the class meets the requirements of Rule 23.

### 1.    Rule 23(a)

Rule 23(a) requires that, for a class to be certified: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

### a.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous" that joinder is impractical.  Fed. R. Civ. P. 23(a)(1).  The Second Circuit has held that "numerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The class in this case, which consists of all Plan members, numbers more than 7,200 individuals.  Prelim. Approval Trans. 11:7-19.  The Settlement Class easily meets the numerosity requirement of Rule 23(a)(1).

### b.    Commonality

Rule 23(a)(2) requires that a class action involve "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  Commonality does not require that all claims or facts among class members be completely identical, just that the claims "arise from a common nucleus of operative facts."  *Marsh*, 265 F.R.D. at 142;  *Global Crossing*, 225 F.R.D. at 451 (explaining that commonality "does not require an identity of claims or facts among class members" but is satisfied "if the

named plaintiffs share at least one question of fact or law with the grievances of the prospective class").

"By their very nature, ERISA actions often present common questions of law and fact." *Marsh*, 265 F.R.D. at 142. Questions of whether a defendant violated ERISA are "common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Id.* at 143 (quoting *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002)). The central legal questions in this case, (a) whether the Plan qualifies as a church plan that is therefore exempt from ERISA and (b) whether Defendants breached their fiduciary duties under ERISA by underfunding and improperly administering the plan, are issues that are common to the entire Settlement Class. Thus, the class meets the commonality requirement of Rule 23(a)(2).

### c.     Typicality

Rule 23(a)(3) requires that the representative Plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that a class representative has "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000). The requirement is met if the (1) "claims of representative plaintiffs arise from same course of conduct that gives rise to claims of the other class members," (2) "where the claims are based on the same legal theory," and (3) "where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative." *Id.* (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

"The typicality requirement is often met in putative class actions bought for breaches of fiduciary duty under ERISA." *Marsh*, 265 F.R.D. at 143 (citing *Koch v. Dwyer*, No. 98-CIV-

5519, 2001 WL 289972, at *3 (S.D.N.Y. Mar. 23, 2001)).  The Named Plaintiff's claims, that Defendants are not legally able to establish a church plan exempt from ERISA's requirements and that Defendants are therefore breaching their fiduciary duties under ERISA and failing to properly fund and administer the Plan, are typical of the class's claims.  The claims at issue in this case are all "effectively the same unitary claim asserted on behalf of the same Plan."  *Id.* Thus, Ms. Kemp-DeLisser and the absent class members all seek the same relief for the same alleged wrongdoing by Defendants.  Rule 23(a)(3)'s typicality requirements are met.

### d.      Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  When evaluating the adequacy of representation, the Court must consider "(i) whether the class representatives' claims conflict with those of the class" and "(ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation."  *Global Crossing*, 225 F.R.D. at 453*; see also Drexel Burnham*, 960 F.2d at 291 ("First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation.  Second, the class members must not have interests that are 'antagonistic' to one another.").

As discussed above with regards to typicality under Rule 23(a), the named Plaintiff's "claims and interests are aligned with those of the [c]lass" because all seek to prove Defendants' liability "based on common facts and claims."  *Marsh*, 265 F.R.D. at 143.  Ms. Kemp-DeLisser, as the Named Plaintiff, has no "conflict of interest" with the absent class members because they all "share the common goal of maximizing recovery."  *Id.* (discussing adequacy of representation in ERISA class action); *see also Drexel Burnham*, 960 F.2d at 291.  Because there is no conflict

between Ms. Kemp-DeLisser's claims and those of the class, the named Plaintiff in this class action meets the Rule 23(a)(4) requirements for adequate representation.

Class Counsel in this case has established that they are qualified, experienced, and able to conduct the litigation of this case. Class Counsel is experienced in handling class actions, complex litigation, and ERISA-related claims. *See* Izard Firm Resume, Izard Decl. Ex. B; Coombs Decl. ¶ 3. The Court finds that Class Counsel also meets the Rule 23(a)(4) requirements for adequate representation.

### 2. Rule 23(b)

#### a. Rule 23(b)(1)

Rule 23(b)(1) provides that a class may be certified if, in addition to the class satisfying the requirements of Rule 23(a):

> prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed R. Civ. P. 23(b)(1). Rule 23(b)(1)(A) is concerned with "possible prejudice to the defendants," and Rule 23(b)(1)(B) is concerned with "possible prejudice to the putative class members." *Global Crossing*, 225 F.R.D. at 453.

ERISA litigation "presents a paradigmatic example of a (b)(1) class" because of the nature of ERISA's "distinctive 'representative capacity' and remedial provisions." *Global Crossing*, 225 F.R.D. at 453. Any Plan participant's claim in an ERISA case like this one

"would, as a practical matter, be dispositive of the interests of fellow Plan members" because such claims "must be brought in a representative capacity on behalf of the entire plan" and any relief granted by a court would "'inure to the benefit of the plan as a whole,' not to the individual plaintiff." *Marsh*, 265 F.R.D. at 144 (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)).  Furthermore, because the claims in this case concern alleged "misconduct in the management in the Plan as a whole, disparate lawsuits by individual participants would raise the specter of varying adjudications." *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (internal quotation marks omitted).  This class therefore satisfies the requirements of Rule 23(b)(1).

### b.        Rule 23(b)(2)

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Plaintiff's claim alleges that Defendants breached their fiduciary duties to the Plan and its beneficiaries due to improperly classifying the plan as a church plan exempt from ERISA's requirements.  The Plaintiff seeks equitable relief, which is authorized under ERISA.  *See* 18 U.S.C. §§ 1132(a)(2) and (3).

Even though the Settlement provides monetary consideration to the Plan, such monetary consideration is incidental to the equitable relief that Plaintiff requested and the certification of the settlement class is, therefore, appropriate under 23(b)(2).  *See Global Crossing*, 225 F.R.D. at 453 ("Where monetary relief would flow automatically to the class as a whole from a grant of equitable relief for breach of fiduciary duty, certification under Rule 23(b)(2) is appropriate."); *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir.

2003) (holding that although relief under ERISA involved monetary benefits, "a declaratory judgment is normally a prelude to a request for other relief, whether injunctive or monetary . . . [a]s long as the concrete follow-on relief that is envisaged will . . . be the direct, anticipated consequence of the declaration . . . the suit can be maintained under Rule 23(b)(2)").  Because the monetary consideration that Plaintiff sought in this case is incidental to, and flows automatically from, the equitable relief, the class satisfies the requirements to be certified under Rule 23(b)(2).

### 3.      Rule 23(g)

Rule 23(g) requires that, when a court certifies a class, the court also appoint class counsel after considering: (1) the work prospective class counsel has done in investigating the claims at issue; (2) counsel's experience with class actions, complex litigation, and the types of claims at issue; (3) counsel's knowledge of the relevant law; and (4) the resources counsel will commit to representing the class.  *See* Fed. R. Civ. P. 23(g).  As discussed above with regards to the adequacy of representation, Class Counsel has demonstrated their relevant experience and knowledge.  Throughout the course of this litigation, Class Counsel has devoted considerable time and resources to investigating the claims in this case.  Had the case not settled, Class Counsel would have continued to devote effort and resources to litigating this case on behalf of the class.  The Court finds that the requirements of Rule 23(g) are satisfied.

### C.      Class Notice was Adequate

Rule 23(c)(2) provides that, when a class if "certified under Rule 23(b)(1) or (2), the [C]ourt may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c).  Rule 23(e) provides that, before a class action settlement may be approved, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P.

23(e).  "For non-opt out cases, such as the ERISA Actions, all that is required" for adequate class

notice is whatever "appropriate notice as the court may direct."  *Marsh*, 265 F.R.D. at 144-45

(internal quotation marks omitted).  To satisfy due process, class notice should be "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections."  *In re Prudential Sec. Inc. Ltd.

Partnerships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.) (quoting *Mullane v. Central Hanover Bank

& Trust Co.*, 339 U.S. 306, 314 (1950)), *aff'd*, 107 F.3d 3 (2d Cir. 1996).

      In the preliminary approval order, the Court approved the proposed Class Notice form

and the proposed procedures for notifying the class.  Prelim. Order at 7-10.  The Class Notice

explained the Settlement Agreement's terms and how class members could object, should they

choose to do so.  As in *Marsh*, the notice procedure involved mailing the Class Notice to all class

members at their last known address, creating and administering a website to provide

information to class members, and providing a toll-free telephone number for class members to

call to obtain information about the settlement.[1]  *See Marsh*, 265 F.R.D. at 145.  Like the notice

form in *Marsh*, the Class Notice here summarized the terms of the settlement; explained that

Class Counsel would be seeking attorney's fees, the reimbursement of expenses actually

incurred, and an incentive award for the named Plaintiff, which Defendants had agreed to pay;

explained that fees and expense reimbursements were subject to Court approval; outlined the

released claims; and provided information about the date and time of the Fairness Hearing, the

class members' right to object, and the procedure that class members could follow in making an

objection.  *See Id.*; Class Notice at 3-10.

---

[1] The Marsh notice procedure also included publishing notice in *The New York Times* and distributing it via *Business Wire*.  *Marsh*, 265 F.R.D. at 145.

As the parties had already agreed to the Mediator's proposal regarding attorneys' fees and expenses, the Class Notice explained that Defendants agreed to pay Class Counsel $800,000 in attorney's fees and reimburse expenses actually incurred and/or pay an incentive award for a total of up to $50,000.  Class Notice at 3.  This notice form and method of providing notice is "substantially similar to those successfully used in many previous ERISA class settlements." *Marsh*, 265 F.R.D. at 145.

In accordance with the Court's preliminary approval order, the parties have provided the class with ample and sufficient notice of the Settlement.  Absent Settlement Class members have been given an appropriate opportunity to voice objections.  The Court therefore finds that the notice provided to the class satisfies both due process and the requirements of Rule 23.

### D.      Plaintiff's Request for Attorneys' Fees is Granted

Plaintiff requests that the Court award Class Counsel $800,000 in attorneys' fees, award Class Counsel $19,711.71 as reimbursement of litigation expenses actually incurred, and award her $2,000 as a case contribution or incentive award.  Fee Br. at 1.  Under the Settlement Agreement and the Mediator's proposal, Defendants have agreed to pay the fees and expenses to Class Counsel and Plaintiff rather than having the awards come from the Settlement Fund. Settlement Agreement § 8.1.3.

The Court has discretion in determining what attorneys' fees are reasonable in a class action settlement.  *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). When evaluating whether a proposed attorneys' fees award in the class action settlement context is reasonable, the Court considers the following *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the

28

litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (internal quotation marks omitted).

In cases such as this one, where the parties agree to a fee that is to be paid separately by the Defendants rather than one that come from, and therefore reduces, the Settlement Fund available to the class, "the Court's fiduciary role in overseeing the award is greatly reduced" because "the danger of conflicts of interest between attorneys and class members is diminished." *Jermyn v. Best Buy Stores, L.P.*, No. 08-CIV-214 CM, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012). The Court must, however, still "assess the reasonableness of the fee award" where the fee does not come from the common fund, because "a defendant is interested only in disposing of the total claim asserted against it, and not in the allocation between the class payment and the attorneys' fees." *Id.* (internal quotation marks omitted). The fact that the parties negotiated a fee that would not reduce the class's recovery only "after settlement terms had been decided," does, nonetheless, support a finding of the award's reasonableness. *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012).

Furthermore, the decision of an appropriate fee award in this case was made by the independent, third-party Mediator, which also weighs in favor of the award's reasonableness. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-CIV-5173 (RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) (noting that parties' negotiation of fee award to be paid directly by Defendants through arms-length negotiation with supervision of independent mediator were all factors weighing in favor of approving the fee award); *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) ("[T]he fact that the award was the product of arm's-length negotiations under the supervision of Judge Katz weighs strongly in favor of

approval.").  As the parties indicated during the Fairness Hearing, they ultimately chose to

delegate the task of determining a reasonable fee award entirely to the independent Mediator,

rather than negotiate this issue amongst themselves.  The Mediator's extensive participation in

determining the fee award lends additional weight to the proposed award's reasonableness.

Courts in the Second Circuit use one of two different methods to analyze attorney's fees.

*Goldberger*, 209 F.3d at 50 ("In sum, we hold that both the lodestar and the percentage of the

fund methods are available to district judges in calculating attorneys' fees in common fund

cases."); *see also McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("[I]t

remains the law in this Circuit that courts may award attorneys' fees in common fund cases under

either the 'lodestar' method or the 'percentage of the fund' method.") (internal quotation marks

omitted).  The first method, the "lodestar method," begins with the multiplication of "the

reasonable hours billed by a reasonable hourly rate."  *Colgate-Palmolive*, 36 F. Supp. 3d at 347-

48.  The district court may then "adjust the multiplier based on other factors such as the risk of

the litigation or the performance of the attorneys."  *Id.* at 348. The second method, the

"percentage of the fund" method, sets a fee that is "a reasonable percentage of the total value of

the settlement fund created for the class."  *Id.*

Many courts in the Second Circuit favor the percentage of fund method for awarding

attorneys' fees in class action settlements.  *See Wal-Mart*, 396 F.3d at 121 ("The trend in this

Circuit is toward the percentage method.")  Courts find that, in typical class action cases, the

percentage method "directly aligns the interests of the class and its counsel and provides a

powerful incentive for the efficient prosecution and early resolution of litigation."  *Id.*  This

potentially contrasts with the lodestar method, which may "create[] an unanticipated disincentive

to early settlements, tempt[] lawyers to run up their hours, and compel[] district courts to engage

in a gimlet-eyed review of line-item fee audits." *Id.*  The Second Circuit has also noted,

however, that both methods have advantages and disadvantages.  *See McDaniel*, 595 F.3d at 419

("[N]either the lodestar nor the percentage-of-fund approach to awarding attorneys' fees in

common fund cases is without problems.").

### 1.  Time and Labor Expended by Counsel

The first *Goldberger* factor considers the "time and labor expended by counsel."

*Goldberger*, 209 F.3d at 50.  The Court finds that Class Counsel has expended considerable time

and effort in resolving this case in a way that is favorable to the class without the need for

extensive discovery and additional time-consuming litigation. Thus, this factor weighs in favor

of the proposed fee award.

In total, Class Counsel has expended over 450 hours to the litigation of this case.  Izard

Decl. ¶ 10; Coombes Decl. ¶ 5.  Those hours represent considerable effort devoted to

investigating the claims at issue, drafting the complaint, analyzing the Defendants' motion to

dismiss, reviewing relevant documents, retaining and working with an actuarial expert to analyze

liability and damages, and negotiating the Settlement Agreement.  Fee Br. at 8.  Furthermore,

Class Counsel will continue to expend time and resources overseeing the administration of the

settlement even after this fee award is approved.  *Id.*  The Court recognizes that "Class Counsel's

fee award will not only compensate them for time and effort already expended, but for time that

they will be required to spend administering the settlement going forward."  *deMunecas v. Bold

Food, LLC*, No. 09-CIV-00440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010).  In

light of Class Counsel's time and efforts, which have resulted in an extremely efficient and

favorable resolution of this case, the proposed fee award is fair and reasonable.

### 2. Magnitude and Complexities of the Litigation

The second *Goldberger* factor considers "the magnitude and complexities of the litigation." *Goldberger*, 209 F.3d at 50. Courts generally recognize that "ERISA concerns a highly specialized area of law" that can be extremely complex. *Colgate-Palmolive*, 36 F. Supp. 3d at 350. As discussed above with regards to the *Grinnell* factors, this case was complex and risky to litigate, given that it concerns an unsettled question of law that no Second Circuit court has yet ruled on. Even though the parties agreed to the Settlement before the motion to dismiss could be fully litigated, the facts and law at the heart of this case were complicated, and the litigation involved a highly contentious question of statutory construction of ERISA that also hinged on potentially fact-bound inquiries. Fee Br. at 9. The magnitude and complexity of the litigation show that the proposed fee award is fair and reasonable.

### 3. Risk of the Litigation

The third *Goldberger* factor considers "the risk of the litigation." *Goldberger*, 209 F.3d at 50. The Second Circuit recognizes that the risk of success is "perhaps the foremost factor" to be considered in determining a fee award in class actions. *Id.* at 54. After all, "despite the most vigorous and competent of efforts, success is never guaranteed." *Grinnell*, 495 F.2d at 471. As discussed above with regards to the *Grinnell* factors and the magnitude and complexities of the litigation, the risks associated with litigating this case were particularly profound because the key legal question in this case is one of first impression in the Second Circuit. Class Counsel nonetheless litigated this case on a contingency basis, accepting the significant risks associated with this case. Fee Br. at 11. In light of the risks of litigation in this case, the proposed fee award is fair and reasonable.

### 4.      Quality of Representation

The fourth *Goldberger* factor considers "the quality of representation" by Class Counsel. *Goldberger*, 209 F.3d at 50.  For the reasons discussed below, the quality of representation in this case show that the proposed fee award is fair and reasonable.

The Second Circuit has held that "the quality of representation is best measured by results, and that such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger*, 209 F.3d at 55 (internal quotation marks omitted).  Given that Plaintiff alleged that the Plan was underfunded by approximately $140 million, a settlement for $107 million, with SFH and Trinity providing an additional 15 year guarantee for the Plan, is extremely favorable for the class.  Compl. ¶ 1; Settlement Agreement § 9.2.

Class Counsel in this case is comprised of attorneys and law firms that are national leaders in class action litigation and ERISA matters.  Izard, Kindall & Raabe, LLP has been appointed lead or co-lead counsel in numerous ERISA class actions and other class action.  Firm Resume at 1-2.  McCarthy, Coombes & Costello, LLP is a litigation firm that specializes in social security disability, workers' compensation, and personal injury law.  Coombes Decl. ¶ 3.  "[T]he quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work." *Global Crossing*, 225 F.R.D. at 467.  Defendants were represented by highly capable attorneys from Proskauer Rose LLP, a leading international firm, aided and assisted by Verrill Dana LLP acting as local counsel.

### 5.      Requested Fee in Relation to Settlement

The fifth *Goldberger* factor considers "the requested fee in relation to the settlement." *Goldberger*, 209 F.3d at 50.  While the fee award in this case will be paid by Defendants and will

not come out of the Settlement Fund, a comparison of the requested attorneys' fee award and the Settlement Fund may still be instructive in assessing the reasonableness of the award.  *See McBean*, 233 F.R.D. at 392 ("[W]hile this is not a common fund case, the fact that the award here is lower than many awards actually taken from a common fund, at the expense of absent class members, is further evidence of its reasonableness.").  While the Mediator appears to have proposed a fee without relying on a lodestar calculation, a comparison of the proposed fee award to the lodestar measurement may also be helpful in determining whether the fee award is fair. *See Sony SXRD*, 2008 WL 1956267 at *16 (applying lodestar cross-check to determine reasonableness of fee award though attorney's fee was not to come from common fund).  In light of comparisons to both the Settlement Fund and the lodestar, the attorney's fee award in this case is fair and reasonable.

The proposed fee award of $800,000 was based on the Mediator's proposal, determined only after the parties finished negotiating the Settlement Agreement's terms.  Fee Br. at 2.  While the Mediator does not appear to have relied on a lodestar calculation, his proposed award of $800,000 represents a 2.77 multiplier compared to Class Counsel's lodestar.  *Id.*  This is within the range of lodestar multipliers that have been found reasonable by courts in the Second Circuit. *See, e.g.*, *Wal-Mart*, 396 F.3d at 123 ("Here, the lodestar yields a multiplier of 3.5, which has been deemed reasonable under analogous circumstances.").

Were the $800,000 award to have come from the Settlement Fund instead of Defendants paying it separately, it would have represented only 0.7 percent of the fund.  Fee Br. at 14.  Had the fee award been made from the Settlement Fund, it would have represented a significantly lower percentage of the fund than is typically awarded as attorney's fees in other ERISA class action cases.  *See Colgate-Palmolive*, 36 F. Supp. 3d at 351 (determining that "a reasonable

34

baseline fee for an ERISA case of this size is 25%" by undertaking an empirical analysis of class action and ERISA class action settlements "which reflect a median fee of 25% to 28% in ERISA cases of comparable size"); *Marsh*, 265 F.R.D. at 149 (finding fee of "one-third of the recovery" reasonable in ERISA class action settlement).

### 6.      Public Policy Considerations

The sixth *Goldberger* factor analyzes "public policy considerations." *Goldberger*, 209 F.3d at 50.  "Congress passed ERISA to promote the important goals of protecting and preserving the retirement savings of American Workers.  [ERISA] specifically encourages private enforcement." *Marsh*, 265 F.R.D. at 149-50.  Class Counsel's fees "should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Colgate-Palmolive*, 36 F. Supp. 3d at 352 (internal quotation marks omitted) (discussing ERISA class action).  In *Marsh*, as in this case, "the [Department of Labor] took no action against Defendants," which meant that "[w]ithout the efforts of Plaintiffs' Counsel, the participants in [the Plan] . . . would not have obtained any relief at all." *Marsh*, 265 F.R.D. at 150.  As in *Marsh*, public policy considerations therefore justify the proposed fee award, as Class Counsel "should receive a reasonable attorney's fee for their efforts," to ensure that Plan participants have a remedy. *Id.*

### 7.      Lodestar Cross-Check

Courts often compare a proposed fee award in a class action to the lodestar, or a "lodestar cross-check" as a final "sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353.  While the Mediator here does not appear to have relied on a percentage of the fund method and Defendants have agreed to pay Class Counsel's attorney's fees separately, so that the fees will not come out of the Settlement

Fund, comparing the proposed fee award to the lodestar may still be helpful in assessing the fee award's reasonableness.  *See Sony SXRD*, 2008 WL 1956267 at *16 (discussing lodestar multiplier as a way to test the "reasonableness of the requested fee award" though fees would not be paid out of the settlement fund).

The proposed fee award of $800.000 represents a 2.77 multiplier compared to Class Counsel's lodestar.  Fee Br. at 2.  This 2.77 multiplier of the lodestar is well within the range of lodestar multipliers that are regularly approved by district courts in the Second Circuit.  *See, e.g.*, *Wal-Mart*, 396 F.3d at 123 ("Here, the lodestar yields a multiplier of 3.5, which has been deemed reasonable under analogous circumstances."); *Fleisher*, 2015 WL 10847814 at *18 (approving lodestar multiplier of 4.97 and noting that Second Circuit district "[c]ourts regularly award lodestar multipliers from 2 to 6 times lodestar").  That the proposed fee award represents a 2.77 multiplier compared to Class Counsel's lodestar supports the reasonableness of the award.

### E.      Plaintiff's Request for Reimbursement of Litigation Expenses is Granted

Courts may reimburse counsel for expenses reasonably and necessarily incurred in litigating a class action.  Fed. R. Civ. P. 23(h); *see also Jermyn*, 2012 WL 2505644 at *9 ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients."); *Marsh*, 265 F.R.D. at 150 ("It is well-established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses.").  Class Counsel request reimbursement of $19,711.71 in expenses incurred during the litigation of this case, and have itemized the expenses at issue.  Izard Decl ¶ 11; Coombes Decl. ¶ 6.  All the expenses incurred by Class Counsel were reasonable and necessary to the litigation of this case.  Furthermore, the requested reimbursement of expenses are well under the

$50,000 limit that the Mediator determined was reasonable, even taking into account the $2,000 incentive fee that the parties request for the Named Plaintiff.

### F.  Plaintiff's Request for an Incentive Award is Granted

Incentive awards to representative plaintiffs in class action cases "compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001).  Such awards are designed to reimburse representative plaintiffs, who "take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action." *Marsh*, 265 F.R.D. at 150.  Courts in this Circuit frequently approve incentive awards of various amounts in many types of class actions, with determinations of whether the proposed amounts are appropriate being based, somewhat, on assessments of the burdens a representative plaintiff took on by participating in the case.  *See Fleisher*, 2015 WL 10847814  at *24 (awarding, in insurance class action, an incentive award of $25,000 to named plaintiff who spent "at least 88 hours actively fulfilling his obligations as a Class representative" including by attending all-day deposition and also approving $5,000 incentive awards to other named plaintiffs); *Dornberger*, 203 F.R.D. at 124-25 (approving, in civil RICO class action, an award of $10,000, for representative plaintiff who provided assistance to class counsel in various ways for six years including by "traveling to New York for her deposition at her own cost," and awards of $1,500 each for eight subclass representative); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 188 (S.D.N.Y. 1997) (affirming Special Master's finding, in employment discrimination class action, that awards ranging from $2,500 to $85,000 were appropriate for various representative plaintiffs

depending on degree of participation and/or post-litigation burden or risk, including risk of retaliation by employer).

The $2,000 incentive award that Ms. Kemp-DeLisser requests is well within the range of case contribution awards courts have granted in other ERISA class actions in this circuit. *See Colgate-Palmolive*, 36 F. Supp. 3d at 354 (approving incentive award of $5,000 for each of six named plaintiffs who reviewed draft pleadings and motions, searched for and produced relevant documents, reviewed filings, and communicated regularly with class counsel); *Marsh*, 265 F.R.D. at 150-51 (approving incentive award of $15,000 for each of three named plaintiffs who initiated the action, remained in frequent contact with class counsel, responded to document requests and interrogatories, reviewed and approved pleadings, assisted with discovery, were involved in settlement discussions, and prepared for, traveled to, and sat for full-day depositions).

Like the plaintiffs in these cases, Ms. Kemp-DeLisser was in regular communication with Class Counsel, reviewed and discussed court documents with Class Counsel, discussed mediation and settlement issues with Class Counsel, and approved the proposed settlement. Kemp-DeLisser Decl. ¶ 6.  In light of her efforts, the proposed $2,000 incentive award is a modest one. Ms. Kemp-DeLisser is therefore awarded a payment of $2,000 to compensate her for her participation in this case.

## III.    CONCLUSION

For all of the foregoing reasons, the Court (1) **GRANTS** the motion for final approval of the Settlement, (2) certifies the Class for Settlement purposes, (3) determines that the notice provided to the class was appropriate and sufficient, (4) **GRANTS** the motion to award $800,000 in attorney fees to Class Counsel, (5) **GRANTS** the motion to award  $19,711.71 as

reimbursement of litigation expenses to Class Counsel, and (6) **GRANTS** the motion to award Ms. Kemp-DeLisser $2,000 as a case contribution or incentive award in recognition of her efforts on behalf of the Class.  The Complaint is hereby **DISMISSED** with prejudice.

      The Clerk is hereby directed to enter this judgment and close this case.

      SO ORDERED at Bridgeport, Connecticut, this 3rd day of November, 2016.


                                        /s/ Victor A. Bolden
                                     Victor A. Bolden
                                     United States District Judge